

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00516-CV

IN THE INTEREST OF C.D.S., JR.,
A CHILD

----------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

In two points, appellant C.D.S., Sr. (Father) appeals the trial court's order terminating his parental rights to his son, C.D.S., Jr. (Clay).[2] Father contends that the evidence is legally and factually insufficient to prove that termination of his parental rights is in Clay's best interest. We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

[2]We will use "Clay" as an alias to refer to C.D.S., Jr. throughout this opinion. *See* Tex. R. App. P. 9.8(b)(2).

**Background Facts**

M.B. (Mother) tested positive for methamphetamine several times during her pregnancy with Clay, including within a month of his birth. She gave birth to Clay in January 2011. Upon his birth, his meconium[3] tested positive for methamphetamine. Based on Mother's drug use, Child Protective Services (CPS) removed Clay from her care while he was still at the hospital.

CPS assigned Gladys Demus to be the caseworker on Clay's case. During Demus's investigation into the parents' backgrounds, she learned that Father had a history of involvement with CPS but not as a parent; a child who had been around Father had accused him of sexually abusing her. The record does not reflect whether Mother and Father ever lived together or were married; regardless, Clay never lived with either of his parents.

The Department of Family and Protective Services (the Department) filed a petition seeking termination of the parents' parental rights to Clay if reunification could not be achieved. The trial court assigned the Department as Clay's temporary sole managing conservator and appointed counsel to represent each parent.

Soon after the removal, Demus spoke with the parents about working on a service plan, but "neither one of them wanted to do anything." Father never

---

[3]Meconium is a "dark greenish mass . . . that accumulates in the bowel during fetal life and is discharged shortly after birth." Webster's Third New Int'l Dictionary 1401 (2002).

participated in any services because he went to prison in March 2011 for forgery and stayed there throughout the rest of Clay's case.

At the end of the termination trial in December 2011, the trial court terminated Father's parental rights to Clay on the grounds that termination is in Clay's best interest, that Father had engaged in conduct or had knowingly placed Clay with persons who had engaged in conduct that had endangered Clay's physical or emotional well-being, and that Father had knowingly engaged in criminal conduct that had resulted in his conviction of an offense, imprisonment, and an inability care for Clay for not less than two years from the date that the Department filed its termination petition.[4]  The court named the Department as Clay's permanent managing conservator.  Appellant brought this appeal.

### Clay's Best Interest

In his two points, appellant contends that the evidence is legally and factually insufficient to sustain the trial court's finding that termination of his parental rights to Clay is in Clay's best interest.[5]  A parent's rights to "the

---

[4]*See* Tex. Fam. Code Ann. § 161.001(1)(E), (Q), (2) (West Supp. 2011). Mother voluntarily relinquished her parental rights to Clay, and the trial court terminated her rights on that basis.  She is not a party to this appeal.

[5]Father does not contest, in either the title or the body of his points, the sufficiency of the evidence for the trial court's findings under section 161.001(1)(E) and (Q).  *See* Tex. Fam. Code Ann. § 161.001(1)(E), (Q).  While he argues in the body of his first point that there is no clear and convincing evidence that he knowingly placed or knowingly allowed Clay to remain in conditions or surroundings that endangered Clay's physical or emotional well-being, the trial court did not terminate Father's parental rights on that ground. *See* Tex. Fam. Code Ann. § 161.001(1)(D).

3

companionship, care, custody, and management" of his or her children are constitutional interests "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S. Ct. 1388, 1397 (1982); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). "While parental rights are of constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). In a termination case, the State seeks not just to limit parental rights but to erase them permanently—to divest the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit. Tex. Fam. Code Ann. § 161.206(b) (West 2008); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). We strictly scrutinize termination proceedings in favor of the parent. *Holick*, 685 S.W.2d at 20–21; *In re R.R.*, 294 S.W.3d 213, 233 (Tex. App.—Fort Worth 2009, no pet.).

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must prove by clear and convincing evidence that termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(2). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2008). Due process demands this heightened standard because termination results in

4

permanent, irrevocable changes for the parent and child. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).

In evaluating the evidence for legal sufficiency in parental termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). We review all the evidence in the light most favorable to the finding and judgment. *Id.* We resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* We consider undisputed evidence even if it is contrary to the finding. *Id.* That is, we consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *Id.* We cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is the factfinder's province. *Id.* at 573, 574. And even when credibility issues appear in the appellate record, we defer to the factfinder's determinations as long as they are not unreasonable. *Id.* at 573.

In reviewing the evidence for factual sufficiency, we give due deference to the factfinder's findings and do not supplant the jury's verdict with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006); *see also In re L.M.I.*, 119 S.W.3d 707, 712 (Tex. 2003) (explaining that in a termination case, an appellate court should not reweigh disputed evidence or evidence that depends on witnesses'

credibility), *cert. denied*, 541 U.S. 1043 (2004). We determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief of the grounds for termination. Tex. Fam. Code Ann. § 161.001; *C.H.*, 89 S.W.3d at 28. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); *see also In re D.M.*, 58 S.W.3d 801, 814 (Tex. App.—Fort Worth 2001, no pet.) (explaining that the termination statute "should not be used to merely reallocate children to better and more prosperous parents"). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a) (West 2008). Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include the desires of the child, the emotional and physical needs of the child now and in the future, the emotional and physical danger to the child now and in the future, the parental abilities of the individuals seeking custody, the programs available to assist these individuals to promote the best interest of the child, the plans for the child by these individuals or by the agency seeking custody, the stability of the home or proposed placement, the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and any

6

excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A parent's noncompliance with a service plan may affect a factfinder's consideration of the child's best interest. *In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.); *see also In re K.S.*, No. 02-09-00331-CV, 2010 WL 2432012, at *8 (Tex. App.—Fort Worth June 17, 2010, no pet.) (mem. op.) (noting that a mother had been "unwilling to cooperate with CPS and undertake the services that would return [the child] to her"). Also, a parent's extensive criminal record reflects on the best interest of the child in maintaining a relationship with that parent. *See In re V.V.*, 349 S.W.3d 548, 558 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (en banc). A child's limited conscious knowledge of the parent, demonstrating a lack of the bond that the child has with the parent, may also affect the child's best interest in terminating the parent's rights. *See id.*

Demus was the sole witness at the termination trial; neither Father nor Mother testified although they both attended the trial. Before Demus's testimony began, the trial court admitted documents establishing that Father has been convicted of the following offenses:

- forgery of a $672.84 check (committed in December 2010, convicted in May 2011, fifteen years' confinement);[6]

---

[6]Father was in the process of appealing this conviction at the time of the termination trial.

7

- forgery of a $2,000 check (committed in September 2003, convicted in June 2004, one year's confinement);

- injury to a child (committed in July 2002, convicted in June 2004, five years' confinement);

- theft by check (committed in December 2001, convicted in August 2003, twelve days' confinement);

- Class C assault (committed in May 2001, convicted in August 2001, $100 fine); and

- possession of cocaine (committed in March 1994, convicted in April 1998 after a revocation of community supervision, two years' confinement).

The indictment related to appellant's injury to a child conviction alleged that he caused injury to a child by "poking her with his finger."[7]  Demus projected 2018 as Father's release date from prison for his May 2011 forgery conviction.

According to a statement from Mother to CPS before the trial began, Father knew that she was using methamphetamine while she was pregnant. Father did not present evidence that he made any attempt to abate Mother's drug use.  Clay required treatment stemming from issues related to Mother's drug use during her pregnancy.

At the time of the trial in December 2011, Clay was in a foster home and was, according to Demus, "doing great."  Demus conveyed that CPS planned to

---

[7]In his brief, appellant states that he was convicted of "unlawful sex with a minor."  We may accept this fact to be true.  *See* Tex. R. App. P. 38.1(g); *Tri v. J.T.T.*, 162 S.W.3d 552, 554 & n.4 (Tex. 2005).  We have held that "evidence of sexual abuse of one child is sufficient to support a finding of endangerment with respect to other children."  *In re R.W.*, 129 S.W.3d 732, 742 (Tex. App.—Fort Worth 2004, pet. denied).

seek an adoptive family for Clay if the trial court terminated Father's rights. Father's attorney had mentioned that Clay could be placed with Father's sister in Washington. Father's sister called Demus to be considered for placement. At the time of the trial, a home study concerning Father's sister had been started but was not completed. Father's sister did not have a criminal history. Demus said that Father's sister would be given preference as a familial placement if Father's parental rights to Clay were terminated.

In the event that Father's sister did not pass the home study, Demus expressed that Clay's foster family, where he had been staying for eight to nine months preceding the trial, was interested in adopting him. Demus testified that Clay's foster parents met his physical and emotional needs and would be able to continue doing so in the future.

Considering Father's knowledge of Mother's drug use during her pregnancy; his extensive criminal history over the course of many years, including his conviction for causing injury to a child; his inability, because of his most recent conviction and sentence, to care for Clay for an extended period; his prior sexual involvement with a child; his lack of desire (or ability, because of his incarceration) to participate in the Department's service plan; his failure at trial to provide any excuses for his bad acts; Clay's lack of any significant relationship with Father (because of Clay's removal from the hospital in January 2011 and

9

Father's incarceration two months later);[8] and the potential for Clay to have a positive, permanent, and stable environment through adoption by either Father's sister or Clay's foster family, we hold that the trial court could have reasonably formed a firm conviction or belief that termination of Father's parental rights to Clay is in Clay's best interest. *See J.P.B.*, 180 S.W.3d at 573; *C.H.*, 89 S.W.3d at 28. We overrule Father's points.

## Conclusion

Having overruled Father's points, we affirm the trial court's judgment.

PER CURIAM

PANEL: LIVINGSTON, C.J.; DAUPHINOT and GABRIEL, JJ.

DELIVERED: June 14, 2012

---

[8]Demus indicated that Father had visited Clay one or two times since Clay's removal as an infant.